UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN LITTLE,

    Plaintiff,

v.

DAVE OSTER et al.,

    Defendants.

Case No. CV08-0101-RAJ-JPD

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff John Little, a state inmate, is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. He alleges that while he was a pre-trial detainee in Snohomish County Jail ("Jail") in Everett, Washington, defendants violated his constitutional rights because (1) he was "denied access to the legal services groups," (2) he was retaliated against for filing lawsuits against Jail officials by being placed in "maximum isolation," and (3) defendants failed to protect him from other inmates. Dkt. No. 6 at 3. Defendants have filed a motion for summary judgment (Dkt. No. 15), supported by declarations and exhibits. Despite being granted an extension of time by this Court to respond to defendants' motion (Dkt. No. 34), plaintiff has not filed a response to the motion. Pursuant to Local Rule CR

REPORT AND RECOMMENDATION
PAGE - 1

7(b)(2), plaintiff's failure to respond to defendants' motion amounts to an admission that the motion has merit. For the reasons discussed below, the Court recommends that defendants' motion be GRANTED and that plaintiff's complaint and this action be DISMISSED with prejudice.

## II. BACKGROUND[1]

### A. Plaintiff's Housing In Module 4-North

Plaintiff was booked into the Jail as a pretrial detainee on December 5, 2007. Dkt. No. 17 at 2. Plaintiff is no stranger to the Jail, as he has been booked into the Jail over 50 different times since 1996. Dkt. No. 21 at 1. Plaintiff was assigned to housing in 4-North, the Jail's maximum security module, for his own protection. Dkt. No. 17 at 2. According to Jail policy and practice, an inmate may be placed in maximum security for their own safety and protection. *Id.* Plaintiff had requested at his booking to be placed in protective custody due to gangs and "white hate groups that ha[ve] sworn to get me." Dkt. No. 6 at 3. Module 4-North is considered the safest module at the Jail. Dkt. No. 17 at 2. Plaintiff had been assigned to housing in 4-North for his own protection on July 14, 2007 during a prior stint at the Jail, and he returned to 4-North when he was booked into the Jail again on November 13, 2007 and on December 5, 2007.[2] Dkt. No. 27 at 3.

On December 30, 2007, plaintiff submitted a grievance regarding his placement in model 4-North, stating that he had been placed in module 5-South before, that he did not want to be in 4-North, and that he had not done anything to be housed there. Dkt. No. 17 at 7. In response, defendant Dave Oster notified plaintiff that 4-North is the "most secure protective

---

[1] The declarations and exhibits submitted by defendants in support of their motion for summary judgment establish the following facts, which are uncontroverted by plaintiff.
[2] The specific catalyst for plaintiff's transfer to 4-North on July 14, 2007 is unclear from the record in this case. However, plaintiff did file a grievance on July 24, 2007 indicating that he had been notified on July 14, 2007 by a corrections officer that a note from two inmates had threatened plaintiff with bodily harm. *See Little v. Oster et al.*, Case No. 07-1317, Dkt. No. 28 at 5.

REPORT AND RECOMMENDATION
PAGE - 2

custody" and that plaintiff's housing in 4-North "is appropriate as [5-South] is not protection from hate groups and gangs." *Id.* Oster also stated that "you are in Max [security] due to your refusal to move to other non-restrictive housing which you have been offered." *Id.*

On January 3, 2008, plaintiff appealed the first response to his grievance, stating that the Jail's previous policy was to place inmates who had requested protective custody in 5-South, which is where plaintiff claimed he was placed before. Dkt. No. 17 at 9. Plaintiff stated that he believed he was now being placed in 4-North as "a retaliatory act due to civil law suits." In response, a prison official, Finsen, notified plaintiff that "5 South is not appropriate housing for you. You have been offered less restrictive housing but have declined this." *Id.*

On January 8, 2008, plaintiff appealed Finsen's response to his grievance, reiterating that protective custody in 5-South was appropriate before, and that "now because of civil lawsuits against you and this admin., it's not." Dkt. No. 17 at 11. In a letter dated January 14, 2008, defendant Steve Thompson, the Snohomish County Corrections Director, responded to plaintiff's appeal. Dkt. No. 17 at 7, 9, 17. Thompson stated that plaintiff had requested to be placed in 5-South to be "kept separate from numerous gang members." *Id.* Thompson noted that plaintiff however had not provided the Jail classification staff with "any specific keep separates," and that plaintiff had declined less restrictive housing options, "always reverting back to your original request to move to 5 South." *Id.* Thompson stated that since plaintiff will not move to the less restrictive housing options that have been presented to him, "classification staff is left with the option of maximum security." *Id.* Thompson upheld the earlier responses of Oster and Finsen and determined that plaintiff's housing status in maximum security was appropriate. *Id.*

    B.    <u>Plaintiff's Request For Envelopes Addressed To Legal Services Groups And Other Individuals</u>

On several occasions during his incarceration, plaintiff requested and received envelopes for legal mail. Snohomish County Code provides for unlimited legal mail, and

REPORT AND RECOMMENDATION
PAGE - 3

defines legal mail as correspondence with the prisoner's attorney and the courts. SCC 5.16.020(2)(ii). In addition to unlimited legal mail, indigent inmates are also permitted three personal letters per week at the Jail's expense. *Id.* When an indigent inmate requests an envelope for legal mail, the inmate must indicate to the responsible Classification Counselor to whom the envelope should be addressed. Dkt. No. 27 at 2. The Classification Counselor determines whether the proposed addressee is the inmate's attorney or a court and if so, pre-addresses the envelope. *Id.*

On December 22, 2007, Classification Counselor Randall Hiller provided plaintiff four pre-addressed envelopes for legal mail. Dkt. No. 18 at 2. On December 23, 2007, defendant Terry Bloss, who was also a Classification Counselor, provided plaintiff four pre-addressed envelopes for legal mail. Dkt. No. 27 at 2. On December 31, 2007, Bloss provided plaintiff four additional pre-addressed envelopes for legal mail. *Id.* However, also on December 31, 2007, Bloss did not provide plaintiff pre-addressed envelopes for legal mail to Yvette War Bonnett, the Northwest Judicial Center, the Public Interest Law group, Suzanne Howle, Anne Kyser and Maria Fox. *Id.* at 2-3. Bloss did not provide plaintiff envelopes for legal mail for these groups and individuals because Bloss knew they were not plaintiff's attorney nor a court and, therefore, they did not meet the Jail's requirements for legal mail. *Id.*

Inmates may also purchase an "indigent commissary pack" from the Jail's commissary, which contains three blank envelopes and six sheets of paper. According to plaintiff's Resident Account Summary, during the relevant period he purchased commissary packs on December 10, 2007, December 31, 2007, January 14, 2008 and January 21, 2008. Dkt. No. 27 at 12-13. These purchases would have provided plaintiff a total of 12 blank envelopes.

    C.    <u>Plaintiff's Failure To Protect Allegation</u>

Liberally construed, plaintiff's complaint appears to allege that defendants failed to protect him from other inmates. Dkt. No. 6 at 3. Plaintiff alleges in his complaint that "I was trying to get away from assaulted me [sic] by throwing piss out of cups, pissing on my cell

REPORT AND RECOMMENDATION
PAGE - 4

door[,] throwing dirty mop water with feces in it under my cell door and screaming [the n-word]." Dkt. No. 6 at 3.

On January 17, 2008, plaintiff filed a grievance regarding the foregoing incident, stating that it was done by "white hate groups" on January 11, 2008. Dkt. No. 17 at 19. In response, defendant Oster stated, "If you are having problems with others in the module report it immediately. Also, you are in Max [security] and do not have contact with other inmates. Thus, no danger." *Id.* On January 24, 2008, plaintiff appealed Oster's response, stating that he did not believe his concerns regarding the incident were addressed by Oster's response. Dkt. No. 17 at 21. In response to plaintiff's appeal, defendant Oster noted on the appeal form that plaintiff had been released from the Jail, and therefore no response to the grievance was required.[3] *Id.*

D. Procedural Background

Plaintiff submitted the instant complaint on January 23, 2008. Dkt. No. 1-2. After being granted permission to proceed *in forma pauperis*, plaintiff's complaint was filed on February 26, 2008. Dkt. No. 6. Defendants filed their motion to dismiss and motion for summary judgment and supporting declarations and exhibits on May 9, 2008. Dkt. No. 15. On May 30, 2008, plaintiff moved this Court for, among other things, an extension of time to respond to defendants' motion, and on June 23, 2008 the Court granted plaintiff an extension of time to respond. Dkt. No. 34 at 1. The Court's Order stated, in part, that plaintiff shall have not later than July 21, 2008 to respond to defendants' motion. *Id.* Plaintiff objected to certain aspects of the Court's Order but did not challenge or otherwise address the portion of the Order granting plaintiff an extension of time to respond to defendants' motion. Dkt. No. 35. To date, plaintiff still has not responded to defendants' motion.

---

[3] Plaintiff was released from the Snohomish County Jail on January 28, 2008. Dkt. No. 21 at 2.

REPORT AND RECOMMENDATION
PAGE - 5

## III. DISCUSSION

### A. Federal Rule of Civil Procedure 56(c)

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "[The rule's] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 256. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, __U.S.__, 127 S. Ct. 1769, 1776 (2007) (internal citation and quotation omitted). "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Conclusory allegations in pleadings are not evidence, and cannot by themselves create a genuine issue of material fact. *See Project Release v. Prevost*, 722 F.2d 960, 969 (2nd Cir. 1983). Where a party fails to make a showing sufficient to establish the existence of an essential element of his case on which he bears the burden of proof at trial, all other facts are

necessarily rendered immaterial and Rule 56(c) mandates the entry of summary judgment. *Celotex*, 477 U.S. at 322-23.

      B.      <u>Plaintiff's Denial Of Access To Courts Claim Fails Because He Has Not Suffered An Actual Injury.</u>

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). However, this right of access to the courts "guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356. To establish a violation of the right of access to courts, a prisoner must establish that he or she has suffered an actual injury. *Id.* at 349. An actual injury is a specific instance in which the inmate was actually denied access to the courts and prohibited from pursuing a legal claim. *See Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989); *Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999). Moreover, the right of access to courts is only a right to bring complaints to federal court and not a right to the discovery of such claims or to litigate them effectively once filed with a court. *See Lewis*, 518 U.S. at 354-55.

Here, plaintiff's denial of access to courts claim is based on defendant Bloss's refusal to provide plaintiff pre-addressed envelopes for legal mail to certain individuals and "legal services groups," specifically, Yvette War Bonnett, the Northwest Judicial Center, the Public Interest Law group, Suzanne Howle, Anne Kyser and Maria Fox. Dkt. No. 6 at 3; Dkt. No. 27 at 2-3. However, plaintiff fails to establish how Bloss's refusal affected in any manner, much less prohibited, any contemplated or existing litigation. Moreover, all the evidence indicates that no litigation by plaintiff could have been hindered or impeded in any way. During the relevant period, plaintiff was provided 12 envelopes for legal mail. Dkt. No. 18 at 2; Dkt. No. 27 at 2. In addition, plaintiff purchased 12 envelopes from the commissary that he could have addressed to whomever he chose. Dkt. No. 27 at 12-13. Therefore, while defendant Bloss would not provide plaintiff pre-addressed envelopes for legal mail to Yvette War Bonnett, the

Northwest Judicial Center, the Public Interest Law group, Suzanne Howle, Anne Kyser and Maria Fox because they did not meet the Jail's requirements for legal mail (i.e., they were not to be addressed to plaintiff's attorney or a court), plaintiff could have used his 12 envelopes from the commissary to correspond with these individuals and groups if he wished.

The evidence also reveals that plaintiff did in fact regularly correspond with the courts during the relevant period. During his two-month incarceration from December 2007 through January 2008, plaintiff had an appeal pending before the Court of Appeals for the Ninth Circuit, and he corresponded with the Ninth Circuit on three different occasions, including once to request an extension of time to file an opening brief.[4] *See Little v. Behner*, COA No. 07-35441, Dkt. Nos. 34, 37, 40. In addition to his pending appeal, plaintiff had two different cases pending in the district court, and plaintiff corresponded with the district court on two occasions during the period of his incarceration. *See Little v. Oster*, Case No. 07-1317, Dkt. No. 16; *Little v. Pendry*, Case No. 07-1341, Dkt. No. 37. Accordingly, plaintiff has not and cannot demonstrate that he has suffered an actual injury, and his denial of access to courts claim is dismissed with prejudice.

      C.     <u>Plaintiff Fails To Establish A Claim For Retaliation.</u>

Plaintiff also alleges he was retaliated against for filing lawsuits against Jail officials by being placed in "maximum isolation." Dkt. No. 6 at 3. Prisoners have a First Amendment right to "pursue civil rights litigation in the courts." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). To establish a claim for retaliation for exercising his or her First Amendment rights, an inmate must demonstrate: (1) that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance

---

[4] The Ninth Circuit granted plaintiff's request for an extension of time and his opening brief was filed on April 30, 2008, three months after his January 28, 2008 release date. *See Little v. Behner*, COA No. 07-35441, Dkt. Nos. 44, 51.

REPORT AND RECOMMENDATION
PAGE - 8

a legitimate correctional goal. *Id.* The prisoner must submit probative evidence to establish a link between the exercise of constitutional rights and the alleged retaliatory action. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Prisoner retaliation claims are to be evaluated in light of the appropriate deference that must be accorded to prison officials. *See id.* Legitimate correctional goals include preserving institutional order and maintaining security. *See Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995).

Here, plaintiff has failed to establish that he was assigned to housing in 4-North, the Jail's maximum security module, *because of* his exercise of his right to pursue civil rights litigation, or that his housing in 4-North did not reasonably advance a legitimate correctional goal. In fact, all the evidence is to the contrary, as the evidence establishes that plaintiff was placed in module 4-North by Jail officials to preserve institutional order and maintain security, including ensuring plaintiff's personal safety. *See* Dkt. Nos. 17 at 2, 7; 27 at 3. During a prior stay in the Jail several months earlier, plaintiff apparently had been threatened with bodily harm by two other inmates. *See Little v. Oster et al.*, Case No. 07-1317, Dkt. No. 28 at 5. Moreover, plaintiff admits that he requested to be placed in protective custody upon his booking into the Jail, as he wanted to be safe from gangs and "white hate groups that ha[ve] sworn to get me." Dkt. No. 6 at 3. While plaintiff apparently preferred to be placed in module 5-South, he was notified by prison officials that 5-South was not an acceptable housing option for him because it would not have provided him protection from hate groups and gangs in the Jail. Dkt. No. 17 at 7. Plaintiff was offered less restrictive housing options than 4-North but he refused them, insisting only that he wanted to placed in 5-South. Dkt. No. 17 at 7, 9, 17. In view of all the evidence and the deference that must be accorded to prison officials in making inmate housing decisions, plaintiff has not and cannot establish a claim for retaliation, and his retaliation claim is dismissed with prejudice.

### D. Plaintiff's Failure To Protect Claim Fails.

Liberally construed, plaintiff's complaint alleges that defendants failed to protect him from other inmates. Dkt. No. 6 at 3. In his complaint, plaintiff makes the bare allegation that "I was trying to get away from assaulted me [sic] by throwing piss out of cups, pissing on my cell door[,] throwing dirty mop water with feces in it under my cell door and screaming [n-word]." Dkt. No. 6 at 3. On January 17, 2008, plaintiff filed a grievance regarding the foregoing incident, stating that it was done by "white hate groups" on January 11, 2008. Dkt. No. 17 at 19.

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when (1) the inmate is incarcerated under conditions posing a "substantial risk of serious harm" and (2) the prison officials had a "sufficiently culpable state of mind," acting with deliberate indifference. *Id.* at 834; *see also Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2004). "Deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Turning to this case, plaintiff has failed to demonstrate both that he was incarcerated under conditions posing a substantial risk of harm and that prison officials acted with deliberate indifference. Quite the opposite, the evidence shows that plaintiff was placed in module 4-North by prison officials *to protect plaintiff* from other inmates at the prison. *See* Dkt. Nos. 17 at 2, 7; 27 at 3. Upon his booking, plaintiff himself had requested that Jail officials place him in protective custody due to gangs and hate groups housed in the Jail

1 | population. Dkt. No. 6 at 3. Module 4-North is considered the safest module at the Jail and
2 | plaintiff was housed there for his own safety. Dkt. No. 17 at 2. While plaintiff alleges that
3 | inmates engaged in deplorable behavior outside his jail cell, such as urinating and throwing
4 | dirty mop water under his cell door, there is no allegation that plaintiff was in any way harmed
5 | or even physically touched by this behavior. *See* Dkt. No. 6 at 3. Indeed, because plaintiff was
6 | housed in 4-North, other inmates cannot have any physical contact with plaintiff, therefore
7 | helping to ensure plaintiff's safety while incarcerated in the Jail. Dkt. No. 17 at 2, 19. In sum,
8 | plaintiff's allegation concerning the incident on January 11, 2008 cannot sustain a failure to
9 | protect claim and, accordingly, his claim is dismissed with prejudice.

## IV. CONCLUSION

The Court concludes that plaintiff has not satisfied his burden to establish claims for denial of access to courts, retaliation, or failure to protect. Accordingly, the Court recommends that defendants' motion for summary judgment be GRANTED and this action be DISMISSED with prejudice. In addition, this dismissal should count as a "strike" under 28 U.S.C. § 1915(g) because plaintiff's claims are unsupported by any evidence and are therefore frivolous. A proposed Order accompanies this Report and Recommendation.

DATED this 26th day of September, 2008.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge